UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| PROGRESSIVE WASTE SOLUTIONS OF LA, INC. | CIVIL ACTION |
| V. | NO. 16-15830 |
| ST. BERNARD PARISH GOVERNMENT | SECTION "L" (5) |

**ORDER & REASONS**

Before the Court is Defendant's motion to strike. R. Doc. 32. Plaintiff has filed a response in opposition. R. Doc. 33. After reviewing the parties' briefs and the applicable law, the Court now issues this Order & Reasons.

**I.    BACKGROUND**

This case arises out of a contract dispute. Plaintiff Progressive Waste Solutions of LA, Inc. ("PWS") is a Delaware corporation that specializes in solid waste removal. 16-8669, R. Doc. 1 at 1–2. In early 2006, St. Bernard Parish Government ("St. Bernard") issued a Request for Proposals for Municipal Solid Waste Removal, Curb Side Pick Up. 16-8669, R. Doc. 1 at 2. SDT Waste & Debris Services, LLC, ("SDT") submitted a proposal, and on July 27, 2006, contractually agreed to provide solid waste removal services to St. Bernard. 16-8669, R. Doc. 1 at 2. On February 7, 2007, SDT entered into a Time Contract with St. Bernard regarding both curb side pick-up services and dumpster pick-up services. The Time Contract was set to commence on January 28, 2008, and terminate on January 27, 2014. 16-8669, R. Doc. 1 at 3. The Time Contract also provided SDT the option to extend the agreement through July 26, 2016. 16-8669, R. Doc. 1 at 3.

In June of 2011, SDT was purchased by IESI LA Corporation, which included the transfer and assignment of the July 27, 2006 Agreement and the February 7, 2007 Time Contract.

1

Despite the purported term of the Time Contract extending to at least January 27, 2014, St. Bernard told IESI that St. Bernard intended to terminate the contractual relationship. On December 5, 2011, St. Bernard sought bids for curb side pick-up services and dumpster pick up services. 16-8669, R. Doc. 1 at 3–4. On December 8, 2011, IESI filed a Petition for Temporary Restraining Order, Preliminary and Permanent Injunction, and Declaratory Judgment in the Thirty-Fourth Judicial District Court for the Parish of St. Bernard. 16-8669, R. Doc. 1 at 4. The state court issued the preliminary injunction on December 14, 2011, and enjoined St. Bernard from requesting proposals for bids for solid waste collection. 16-8669, R. Doc. 1 at 4. One week later, the state court enjoined St. Bernard from entering into any new contract for the services currently being performed by IESI. 16-8669, R. Doc. 1 at 4.

IESI changed its name to Progressive Waste Solutions of LA, Inc. ("PWS") on January 12, 2012. In May of 2013, St. Bernard once again issued Requests for Proposals inviting vendors to submit proposals for the waste collection services provided by PWS. 16-8669, R. Doc. 1 at 4. In response, PWS filed a Motion for Contempt and a Second Supplemental and Amending Petition for Temporary Restraining Order, Preliminary and Permanent Injunction and Declaratory Judgment in state court on May 20, 2013. 16-8669, R. Doc. 1 at 4–5. The parties resolved their differences before the state court could rule. St. Bernard agreed to extend the Time Contract through December 31, 2020. PWS in turn reduced its rates from $20.00 per household per month to $15.50 per household. R. Doc. 1 at 5. Two months later, PWS and St. Bernard entered into a new Time Contract that extended PWS's provision of solid waste services until December 31, 2020.

On May 19, 2016, St. Bernard wrote to PWS stating that they intended to unilaterally terminate the solid waste services contract on July 6, 2016. St. Bernard provided two reasons for the termination: (1) the St. Bernard Home Rule Charter prohibits contracts for services not

covered by public bid law exceeding three years; and (2) PWS breached the contract by missing residential pickups. 16-8669, R. Doc. 1 at 1-7. PWS filed suit in response, requesting injunctive relief and a declaratory judgment. 16-8669, R. Doc. 1 at 7–9. PWS also sought damages for breach of contract, detrimental reliance, and deprivation of rights under color of law. 16-8669, R. Doc. 1 at 9–13.

In response, St. Bernard filed five counter claims against PWS. 16-8669, R. Doc. 35. In the first of these counterclaims, St. Bernard alleges a breach of contract claim for overbilling for the quantity of services performed from August 1, 2006 through December 31, 2012. 16-8669, R. Doc. 35 at 8-9. PWS seeks indemnification from the SDT Defendants in relation to the first counterclaim.

On October 25, 2016, PWS filed this case against SDT, Inc. and Sidney D. Torres, IV, ("SDT Defendants") seeking a declaratory judgment. No. 16-15830, R. Doc. 1. This case was originally consolidated with No. 16-8669, *Progressive Waste Solutions of LA, Inc. v. St. Bernard Parish Government*. PWS alleges that at on June 1, 2011 Torres owned 100% of SDT Waste & Debris Services, LLC ("SDT Waste & Debris), when IESI LA Corp, now known as PWS, entered a Purchase Agreement to acquire 100% ownership of SDT. According to the terms of that Agreement, SDT and Torres agreed to "indemnify, defend, protect and hold harmless" IESI or its successors from any losses, liabilities, or claims, including costs and expenses, sustained by IESI or a successor corporation as a result of any intentional misrepresentations or omissions by SDT or Torres in the Purchase Agreement. R. Doc. 1 at 4. Plaintiffs allege this included an obligation to defend IESI in any proceeding that was instituted after June 1, 2011 if those claims arose out of any period time before June 1, 2011. R. Doc. 1 at 4.

According to Plaintiffs, St. Bernard Parish has a current suit pending in this Court against PWS as a result of SDT's overbilling between August 1, 2006 and December 31, 2012.

3

Specifically, Plaintiffs allege that a dispute between SDT and St. Bernard arose regarding disposal costs, and while the SDT Defendants claim this dispute was resolved, St. Bernard Parish considered litigating these issues, and each party retained a forensic account in relation to these claims. Plaintiffs aver they were not notified of this dispute in the Purchase Agreement. R. Doc. 1 at 6. Further, Plaintiffs claim St. Bernard and SDT had another dispute regarding the appropriate number of units SDT should bill St. Bernard. R. Doc. 1 at 7. Plaintiffs allege that St. Bernard reduced its payments to SDT, while SDT continued to bill St. Bernard for the same amounts. The parties never resolved this dispute, and it was not disclosed to PWS at the time of the purchase. R. Doc. 1 at 7.

Plaintiffs aver that each of the above disputes led to the lawsuit between PWS and St. Bernard, as St. Bernard seeks to recover payments made as a result of services SDT did, or did not, provide prior to June 1, 2011. R. Doc. 1 at 8. Further, Plaintiffs allege that Torres' threats of a lawsuit against Mr. Taffaro, St. Bernard Parish President, constitute a threat to institute a claim, as contemplated in the Purchase Agreement. R. Doc. 1 at 9. Because PWS was not notified of these potential claims and suits at the time of the sale, it now seeks a declaratory judgment it is entitled to indemnification and defense costs for the portion of the St. Bernard counterclaim that arises from the actions of the SDT Defendants prior to June 1, 2011. R. Doc. 1 at 10. PWS submitted a demand letter to SDT reflecting such, and SDT responded that even if the claims fell within the terms of the indemnification provision, that provision expired four years after the sales date, and thus the indemnification provision no longer applies. R. Doc. 1-6. However, SDT agreed that if the St. Bernard claims are covered by Section 9.7 of the Purchase Agreement, which sets out SDT's ongoing duty to defend, than SDT would provide a defense—but not indemnification—for the relevant counterclaim. SDT explained it had retained counsel to coordinate this defense. R. Doc. 1-6 at 2.

4

PWS argues that the temporal limitations do not apply to the indemnification agreement, and seeks a declaratory judgment from this Court as to its rights to defense and indemnification under the terms of the agreement. R. Doc. 1 at 13. Plaintiffs also seek attorney fees. R. Doc. 1 at 14.

On April 12, 2017, the Court held that Section 9.7 of the Purchase Agreement does not include a duty to indemnify. R. Doc. 119. The Court also held that if Defendants knew about the potential claims at the time of the agreement "and failed to disclose them to PWS, the four-year time limit would not apply, and PWS would be entitled to indemnity under Section 9.1." R. Doc. 119 at 15. Therefore, the present motion relates to the issue of whether Defendants knew about the potentials claims and disclosed them to PWS. On October 16, 2017, this consolidated case was severed from the original action. 16-8669, R. Doc. 153.

## II. PRESENT MOTION

Defendant SDT moves to strike emails and an affidavit submitted as exhibits attached to Plaintiff PWS's motion for summary judgment, R. Doc. 18. R. Doc. 32. SDT argues that the affidavit of Julie Tufaro regarding emails between former St. Bernard Parish Government President Craig Taffaro and Defendant Torres does not meet the requirements of Rule 56(c)(4). R. Doc. 32-1 at 2. SDT argues that while Julie Tufaro was an employee of Torres, the emails were redacted and she was not a sender or recipient of the emails and therefore, her affidavit is speculative hearsay. R. Doc. 32-1 at 2. SDT states that either Craig Taffaro or Torres would be needed to demonstrate the authenticity of the emails. R. Doc. 32 at 2.

PWS responds in opposition to SDT's motion. R. Doc. 33. PWS argues that Julie Tufaro's affidavit authenticates the emails because they were forwarded to her by her employer, Defendant Torres. R. Doc. 33 at 2. PWS also argues that the emails should be self-authenticating

5

under Federal Rule of Evidence 901(b) because they have distinctive characteristics. R. Doc. 33 at 4. Therefore, PWS asks the Court to deny SDT's motion to strike. R. Doc. 33.

**III.   LAW & ANALYSIS**

Generally, in order for documents to be admissible for purposes of summary judgment, they must be authenticated by an affidavit. Fed. R. Civ. Pro. 56(c). "The requirement of authentication . . . as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Fed. R. Evid. 901(a). Additionally, some documents are considered self-authenticating if they have distinctive characteristics. Fed. R. Evid. 901(b)(4). "The appearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances" can satisfy the authentication requirements. *Id.* When considering emails, courts have held that testimony of the sender is not required to authenticate the email. *See, e.g., United States v. Siddiqui*, 235 F.3d 1318, 1322-23 (11th Cir. 2000). Other means may be used to authenticate the email including the sending email address and context and content of the message. *Id.* at 1322-23.

Here, the emails contained in Exhibit 7 to Plaintiff's motion for summary judgment were sent from addresses with the domains of St. Bernard Parish Government and SDT Waste & Debris Services. The emails proport to be sent from Defendant Torres and Mr. Taffaro. The emails were sent during the time period and contain information relevant to the facts of this case. Therefore, the emails in Exhibit 7 have the appearance, content, patterns, and distinctive characteristics such that they are self-authenticating under Rule 901(b)(4). Further, the emails are admissible as evidence under either Federal Rule of Evidence 801(d)(1)-(2) or Rule 803(6).

Concerning affidavits, "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and

show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. Pro. 56(c)(4). Here, the affidavit of Ms. Tufaro contained in Exhibit 8 contains information regarding the emails in Exhibit 7. Ms. Tufaro can speak with personal knowledge regarding those emails because the emails were either forwarded to her by Defendant Torres or she was copied on the original email. R. Doc. 33-1. The facts in the affidavit are admissible in evidence as the emails themselves are admissible as stated above. Finally, Ms. Tufaro is competent to testify as to the content of the emails because she received the emails in question and states that she communicated about their content with her employer, Mr. Torres. Therefore, the requirements of Rule 56(c)(4) are met and the affidavit is admissible.

## IV. CONCLUSION

For the aforementioned reasons,

**IT IS ORDERED** that Defendants' motion to strike, R. Doc. 32, is **DENIED**.

New Orleans, Louisiana, this 19th day of December, 2017.

*[signature]*
UNITED STATES DISTRICT JUDGE